**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich, | No. CV-17-00173-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Kevin Dusek, et al., | |
| Defendants. | |

Pending before the Court is Defendant Charles Ryan's Motion to Dismiss (Doc. 56) and Plaintiff Devin Andrich's Motion to Amend Complaint (Doc. 66). For the following reasons, Defendant's Motion will be granted, and Plaintiff's Motion will be granted.

**I.   Motion to Dismiss**

As relevant to the Motion to Dismiss, Ryan was sued only in his official capacity as Director of the Arizona Department of Corrections ("ADC"). (Doc. 40, ¶ 14.) Plaintiff seeks only monetary damages. (*Id.* at 37.)

Ryan correctly points out (and Plaintiff concedes) that damages are not available for official capacity claims brought under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Ryan's Motion to Dismiss will be granted. Plaintiff argues that dismissal with prejudice is improper because he can amend the First Amended Complaint to seek prospective declaratory relief against Ryan. *See Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004). The issue of whether Plaintiff

should be granted leave to amend his official capacity claim is resolved below in the discussion of Plaintiff's Motion to Amend.

## II. Motion to Amend

### A. Standard of Review[1]

Except for amendments made as a matter of course or with the opposing party's written consent, leave of Court is required to amend a pleading. Fed. R. Civ. P. 15(a). The district court has discretion in determining whether to grant or deny leave to amend, *Foman v. Davis*, 371 U.S. 178, 182 (1962), but leave should freely be given "when justice so requires," Fed. R. Civ. P. 15(a)(2). There is a "strong policy to permit the amending of pleadings." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). In determining whether to grant leave to amend, the Court considers whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) (quoting *Foman*, 371 U.S. at 182).

### B. Proposed Second Amended Complaint

#### 1. Charles Ryan

Ryan is named both in his official and personal capacities. (Doc. 66-1, ¶¶ 15, 16.) Plaintiff alleges the following: Ryan regularly tours ADC prisons, including detention/segregation units. (*Id.* ¶ 164.) Ryan instructed officers (either directly or through the ADC chain of command) to: withhold warm clothing when inmates participate in out-of-cell recreation time in freezing or near-freezing temperatures; deny out-of-cell recreation time to inmates who request warm clothing when temperatures are freezing or near-freezing; and illuminate detention/segregation cells 24 hours per day, 7

---

[1] Ryan argues the Court should apply the "good cause" standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure. However, the Court previously explained that a scheduling conference will be set once all pending motions are resolved and that a new scheduling order (with a new amendment deadline) will follow. Therefore, Plaintiff's Motion to Amend is timely, and he does not need to show good cause under Rule 16(b)(4).

- 2 -

days per week. (*Id.* ¶¶ 165-166, 175.) Pursuant to those instructions, Plaintiff was forced to choose between forgoing out-of-cell recreation time and participating in out-of-cell recreation time without warm clothing in freezing or near-freezing temperatures. (*Id.* ¶¶ 168-170.) Plaintiff was also subjected to a constantly illuminated cell over a 10-week period. (*Id.* ¶¶ 176-179.) As a result, Plaintiff suffered physical and emotional injuries. (*Id.* ¶ 171, 180.)

Based on the foregoing allegations, Plaintiff alleges two Counts against Ryan. In Count Thirteen, Plaintiff alleges that Ryan's clothing policy caused the deprivation of Plaintiff's rights under the Eighth and Fourteenth Amendments. In Count Fourteen, Plaintiff alleges that Ryan's cell-illumination policy caused the deprivation of Plaintiff's rights under the Eighth and Fourteenth Amendments.

### 2. Melody Jones, Y. Robinson, and W. Galloway

Plaintiff alleges the following: Jones inventoried all of Plaintiff's personal property upon Plaintiff's transfer to Arizona State Prison Complex ("ASPC") Tucson. (Doc. 66-1, ¶¶ 18-19.) Jones informed Plaintiff that she was confiscating his prescription eyeglasses, although there had been no issues with his eyeglasses during the numerous searches and security screenings of Plaintiff prior to arriving at ASPC Tucson. (*Id.* ¶¶ 20-21.) Jones instructed Plaintiff to either provide an address where the eyeglasses could be shipped or authorize destruction of the eyeglasses; Plaintiff provided an address. (*Id.* ¶ 25.) Plaintiff has since confirmed that the eyeglasses were not shipped. (*Id.* ¶ 26.)

Between October 27, 2015, the date of Plaintiff's transfer, and November 24, 2015, Jones would not allow Plaintiff access to indigent legal mail. (*Id.* ¶ 29.) On November 6, Plaintiff submitted an Inmate Letter to his unit's deputy warden, complaining that Jones was refusing him access to indigent legal mail. (*Id.* ¶ 30.) Plaintiff submitted two more Inmate Letters with identical complaints on November 15 and November 20. (*Id.* ¶¶ 31, 32.) The deputy warden notified Jones that Plaintiff had submitted three Inmate Letters complaining of her conduct. (*Id.* ¶ 33.)

Plaintiff discovered earlier this year that Jones, Robinson, and Galloway reviewed

a form completed by Jones on October 28, 2015, which describes the eyeglasses as "pr broken glasses." (*Id.* ¶ 73.) Rather than following ADC procedures pertaining to forfeiture and state-issued substitution of Plaintiff's eyeglasses, Jones, Robinson, and Galloway entered into a written agreement to destroy the eyeglasses, which they subsequently did. (*Id.* ¶ 74.) Destruction of the eyeglasses was done in retaliation for the submission of three Inmate Letters complaining of Jones. (*Id.* ¶¶ 96-99.) Plaintiff suffered damages due to his inability to see clearly, which caused headaches, dizziness, permanent damage to his vision, and emotional distress. (*Id.* ¶ 87.)

Based on the foregoing allegations, Plaintiff alleges three Counts against Jones, Robinson, and Galloway. In Count One and Count Three, Plaintiff alleges that the destruction of his eyeglasses was a violation, respectively, of his Eighth and Fourteenth Amendment rights. In Count Two, Plaintiff alleges that the destruction of his eyeglasses was retaliatory conduct done in violation of his First Amendment rights.

### 3. Alfred Ramos, Unknown Dusek, Unknown Nettles, and Unnamed Parties

Plaintiff sues the following individuals for their roles in implementing Ryan's alleged policies of withholding warm clothing and subjecting segregated inmates to constantly illuminated cells: Alfred Ramos, warden of ASPC Tucson; Unknown Dusek, a corrections officer at ASPC Tucson – Catalina Unit; Unknown Nettles, a sergeant at ASPC Tucson – Central Detention Unit; John Doe/Jane Doe I-XX, corrections officers at ASPC Tucson – Catalina Unit or Central Detention Unit; John Doe/Jane Doe Cimarron Sergeant; John Doe/Jane Doe Cimarron Deputy Warden; and John Doe/Jane Doe Central Detention Unit Deputy Warden. (Doc. 66-1, ¶¶ 5, 9-14.)

Plaintiff alleges the following: on November 24, 2015, Plaintiff asked Dusek for a transfer to another ASPC Tucson unit because Jones was refusing him access to indigent legal mail. (*Id.* ¶ 34.) In response, Dusek instructed Plaintiff to write a statement citing the reasons Plaintiff wanted a transfer. (*Id.* ¶ 35.) Plaintiff wrote a statement, expressly stating that he had not been threatened with violence and was not in fear for his safety.

(*Id.* ¶ 36.) After receiving Plaintiff's statement, Dusek ordered ADC staff to transfer Plaintiff to a segregation cell located in in the Cimarron Unit. (*Id.* ¶ 37.) Plaintiff was not permitted to leave his cell unless John Doe/Jane Doe I-XX offered Plaintiff a shower or out-of-cell recreation time. (*Id.* ¶ 38.) These Defendants refused to provide Plaintiff with warm clothing despite knowing that the outside temperatures were freezing or near-freezing, and Plaintiff was forced to choose between remaining in his cell and standing outside in the cold without warm clothing. (*Id.* ¶¶ 42-44.) Ramos, Cimarron Sergeant, and Cimarron Deputy Warden trained John Doe/Jane Doe I-XX to withhold warm clothing pursuant to a policy created by Ryan. (*Id.* ¶¶ 45-46.)

Plaintiff was transferred to the Central Detention Unit on December 7, 2015. (*Id.* ¶ 47.) A corrections officer at the Central Detention Unit informed Plaintiff that Dusek had not provided any information or reports indicating the reasons Plaintiff was transferred to a segregation cell, thus unreasonably delaying ADC staff's ability to review the transfer decision. (*Id.* ¶¶ 48, 50.)

Between December 7, 2015, and January 29, 2016, Plaintiff was confined to his cell in the Central Detention Unit unless John Doe/Jane Doe I-XX offered Plaintiff a shower or out-of-cell recreation time. (*Id.* ¶ 51.) These Defendants refused to provide Plaintiff with warm clothing despite knowing that the outside temperatures were freezing or near-freezing, and Plaintiff was forced to choose between remaining in his cell and standing outside in the cold without warm clothing. (*Id.* ¶¶ 55-57.) Ramos, Nettles, and Central Detention Unit Deputy Warden trained John Doe/Jane Doe I-XX to withhold warm clothing pursuant to a policy created by Ryan. (*Id.* ¶¶ 58, 59.) When Plaintiff opted to remain in his cell, the lack of out-of-cell recreation time caused him weight loss and emotional distress. (*Id.* ¶ 60.) When Plaintiff opted to go outside, he suffered from exposure to the cold temperatures, which caused weight loss and emotional distress. (*Id.* ¶ 61.)

At all times between December 7, 2015, and January 29, 2016, Ramos, Nettles, Central Detention Unit Deputy Warden, and John Doe/Jane Doe I-XX confined or

authorized confining Plaintiff to a cell that was constantly illuminated with powerfully bright lights. (*Id.* ¶ 63.) In so doing, Ramos, Nettles, Central Detention Unit Deputy Warden, and John Doe/Jane Doe I-XX each acted pursuant to a policy created by Ryan. (*Id.* ¶ 66.) As a result of being subjected to constant illumination, Plaintiff suffered disorientation, sleep deprivation, weight loss, increased stress, and emotional distress. (*Id.* ¶ 65.)

On January 29, 2016, Plaintiff was transferred to ASPC Safford. (*Id.* ¶ 71.) Upon his arrival, medical personnel examined Plaintiff and determined that he had lost approximately 30 pounds since his last examination on January 7, 2016. (*Id.* ¶ 72.)

### C. **Futility**

#### 1. **Official Capacity Claim against Ryan**

Plaintiff argues that he can cure his official capacity claim against Ryan by seeking prospective declaratory relief instead of monetary relief. Although the Eleventh Amendment does not bar actions for prospective injunctive relief against government employees in their official capacities, *Doe v. Regents of the University of California*, 891 F.3d 1147, 1153 (9th Cir. 2018), no injunctive relief is available where, as here, a prisoner-litigant is released and thus no longer subject to the challenged prison conditions or policies, *Alvarez v. Hill*, 667 F.3d 1061, 1063-65 (9th Cir. 2012). Since Plaintiff was released, "he no longer has a legally cognizable interest in the outcome of [his] case" for injunctive relief against Ryan. *Alvarez*, 667 F.3d at 1064 (citing *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995)). Plaintiff's proposed official capacity claim against Ryan is moot and, therefore, futile. *See Smith v. Commanding Officer*, 555 F.2d 234, 235 (9th Cir. 1977) (per curiam).

#### 2. **Personal Capacity Claim against Ryan**

Plaintiff argues that he has a viable claim for monetary damages against Ryan in his personal capacity. Supervisors may be held personally liable in § 1983 suits "when culpable action, or inaction, is directly attributed to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). There must be a "sufficient causal connection between the

- 6 -

supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "[T]he supervisor's participation could include his own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1205-06 (internal quotation marks omitted) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)). The requisite causation is also present where the supervisor "set[s] in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal citations and quotation marks omitted).

In Count Thirteen, Plaintiff alleges that "Ryan has issued instructions through the ADC chain of command or directly to officers . . . to withhold long-sleeve shirts, sweaters, stocking caps or coats . . . when inmates participate in out-of-cell recreation time in freezing or near freezing temperatures." (Doc. 66-1, ¶ 165.) In Count Fourteen, Plaintiff alleges that "Ryan has issued instructions through the ADC chain of command or directly to officers . . . that inmates housed in detention/segregation units shall have cells with constant illumination twenty-four (24) hours a day, seven (7) days a week." (*Id.* ¶ 175.) He alleges that Ryan's conduct caused the deprivation of his Eighth Amendment rights. (*Id.* ¶¶ 169, 178.) The Court construes Count Thirteen as a conditions-of-confinement claim brought against Ryan in his personal capacity, as it pertains to Plaintiff's allegations that he was denied warm clothing in violation of the Eighth Amendment. The Court construes Count Fourteen as a conditions-of-confinement claim brought against Ryan in his personal capacity, as it pertains to Plaintiff's allegations that he was subjected to constant illumination in violation of the Eighth Amendment.[2]

---

[2] The proposed second amended complaint is not a model of clarity; both Counts against Ryan include identical allegations that Plaintiff was denied warm clothing, but only Count Fourteen includes allegations that Plaintiff was subjected to constant illumination. The Court construes these Counts as set forth above so that Ryan

Under a liberal construction, Plaintiff has adequately alleged that Ryan "set[] in motion a series of acts by others . . . which [he] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal citations and quotation marks omitted). Alternatively, he has adequately alleged that Ryan is culpable for action relating to "the training, supervision, or *control* of his subordinates" or for "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (emphasis added) (citation and internal quotation marks omitted). Therefore, as construed, Count Thirteen and Count Fourteen are not futile.

### 3. Claims Relating to Eyeglasses

The Court previously found that Plaintiff stated claims against Jones for state-law conversion and for violation of his Eighth Amendment rights under § 1983. (Doc. 39 at 11.) Plaintiff realleges identical claims against Jones in Counts One and Four. These claims will be allowed to proceed. Plaintiff also adds Defendants Robinson and Galloway to Counts One and Four based on allegations that they entered into an agreement with Jones to destroy the eyeglasses in violation of ADC policy. Based on the foregoing, Plaintiff has adequately alleged conversion and § 1983 claims against these Defendants.

In Count Two, Plaintiff alleges a First Amendment retaliation claim. Plaintiff alleges that Jones was notified of his written complaints concerning her denial of access to indigent legal mail. Subsequently, Jones allegedly took retaliatory action by destroying Plaintiff's prescription eyeglasses.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Allegations of harm that is more than minimal suffice to allege the "chilling" element.

---

is reasonably able to respond.

*Id.* at 567 n.11. The Court finds that Plaintiff has adequately alleged a retaliation claim against Jones in Count Two. However, Plaintiff does not allege that Robinson or Galloway were ever notified of Plaintiff's written complaints (which, in any event, did not pertain to either Defendant). Therefore, he has failed to allege that these Defendants took adverse action *because of* his written complaints, and his retaliation claim against them is futile.

### 4. Remaining Claims

The following claims were previously found sufficient and will be allowed to proceed: Counts Five and Six against Defendant Dusek; Counts Eight, Ten, and Twelve against Defendants John Doe/Jane Doe I-XX; and Counts Nine, Eleven, and Twelve against Defendants Cimarron Sergeant, Cimarron Unit Deputy Warden, Central Detention Unit Deputy Warden, Nettles, and Ramos. (Doc. 39 at 11.) Counts Three and Seven will be dismissed as duplicative of Counts One and Six, respectively. (*See id* at 10 (citing *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010) (explaining that the standards for Fourteenth Amendment and Eighth Amendments claims are the same)).)

## D. Prejudice, Bad Faith, and Other Factors

Ryan argues that he would be prejudiced because he would have to continue to litigate a case in which he has no involvement; he is entitled to Eleventh Amendment immunity on the official capacity claims; and he is entitled to qualified immunity on the personal capacity claims. However, Plaintiff sufficiently alleges that Ryan was involved: he avers that Ryan promulgated unconstitutional policies that led to the constitutional deprivations alleged in the second amended complaint. Furthermore, Eleventh Amendment immunity is inconsequential because, as explained above, Plaintiff fails to state an official capacity claim. Finally, although a qualified immunity determination may be made on a motion to dismiss, *see Moss v. United States Secret Service*, 572 F.3d 962, 967-69 (9th Cir. 2009), that issue has not been briefed, and the Court declines to reach it here.

Ryan also argues that Plaintiff is proceeding in bad faith by seeking leave to

| | |
|---|---|
| 1 | amend five months after the deadline set in the original Scheduling Order.  However, the |
| 2 | Court explained in an Order dated April 25, 2018, that it would be issuing a second |
| 3 | scheduling order with new deadlines.  (Doc. 65 at 3.)  There presently being no |
| 4 | amendment deadline, the Court disagrees that Plaintiff acted in bad faith by seeking leave |
| 5 | to amend.  Ryan offers no position as to the remaining *Foman* factors, and the Court finds |
| 6 | that they favor granting leave to amend. |
| 7 | Accordingly, |
| 8 | **IT IS ORDERED:** |
| 9 | 1. Defendant Ryan's Motion to Dismiss (Doc. 56) is **granted with leave to** |
| 10 | **amend**. |
| 11 | 2. Plaintiff's Motion to Amend Complaint (Doc. 66) is **granted** as set forth |
| 12 | above.  Plaintiff shall file a clean copy of his Second Amended Complaint within **ten (10)** |
| 13 | **days** of the date this Order is filed.[3] |
| 14 | Dated this 30th day of July, 2018. |

_____
Honorable Rosemary Márquez
United States District Judge

---

[3] A service order will issue after Plaintiff files the Second Amended Complaint.

- 10 -