**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich, | No. CV-17-00173-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Dusek, | |
| Defendant. | |

Trial in the above-captioned matter is scheduled to begin on January 31, 2022. (Doc. 322.) Currently pending before the Court are ten Motions for Issuance of Trial Subpoenas (Docs. 333, 334, 335, 336, 337, 338, 339, 340, 341, 342) filed by Plaintiff Devin Andrich ("Plaintiff"), who is proceeding pro se. Defendant Dusek ("Defendant" or "Dusek") responded to Plaintiff's Motions. (Docs. 343, 344, 345, 346, 347, 348, 349, 350, 351.)

**I.    Background**

Plaintiff's remaining claim, Count Five of his Second Amended Complaint, alleges retaliation in violation of the First Amendment. (Doc. 74 at 28-30 ¶¶ 121-126; Doc. 255 at 35-36; Doc. 275 at 9.) Specifically, Plaintiff contends that Dusek transferred him to a detention unit in retaliation for Plaintiff complaining about interference with his ability to send legal mail. (Doc. 74 at 28-30 ¶¶ 121-126; *see also* Doc. 255 at 22-28.)

A viable claim of First Amendment retaliation within the prison context contains five basic elements: "(1) [a]n assertion that a state actor took some adverse action against

an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

**II.     Motions for Issuance of Trial Subpoenas**

General Order 18-19 requires "any self-represented litigant who wishes to serve a subpoena" to file a motion for issuance of the subpoena. "The motion must (1) be in writing, (2) attach a copy of the proposed subpoena, (3) set forth the name and address of the witness to be subpoenaed and the custodian and general nature of any documents requested, and (4) state with particularity the reasons for seeking the testimony and documents." Gen. Ord. 18-19. "Issuance of the subpoena shall not preclude any witness or person subpoenaed, or other interested party, from contesting the subpoena." *Id.*

In the pending Motions, Plaintiff seeks to subpoena as trial witnesses Defendant Dusek (Doc. 333), Shandan Nettles ("Nettles") (Doc. 334), Charles Ryan ("Ryan") (Doc. 335), Tara Hoyt ("Hoyt") (Doc. 336), Rose-Marie Cook ("Cook") (Doc. 337), Dionne Martinez ("Martinez") (Doc. 338), Timothy Cox ("Cox") (Doc. 339), Eric Hall ("Hall") (Doc. 340), Kevin Curran ("Curran") (Doc. 341), and Courtney Glynn ("Glynn") (Doc. 342). Plaintiff summarizes each witness's anticipated testimony in the Motions, and he attaches copies of the proposed subpoenas (Docs. 333-1, 334-1, 335-1, 336-1, 337-1, 338-1, 339-1, 340-1, 341-1, 342-1).[1] The proposed subpoenas identify addresses for Dusek (Doc. 333-1), Ryan (Doc. 335-1), Hall (Doc. 340-1), Curran (Doc. 341-1), and Glynn (Doc. 342-1). Defendant has filed the last-known addresses for Hoyt, Cook, Martinez, and Cox under seal. (Doc. 303.) Plaintiff avers that defense counsel has refused to provide an address for Nettles, and he states that he intends to seek an order to show cause why Defendant should not be required to disclose Nettles's address. (Doc.

---

[1] Plaintiff attaches copies of five subpoenas for each witness, compelling the witness's attendance at each anticipated day of trial. Only the first proposed subpoena for each witness is necessary, as the Court will notify the witnesses on the first day of trial that they are under a continuing obligation to attend trial on the anticipated days of their testimony.

334 at 3-4.)

Defendant does not dispute that Plaintiff has satisfied the requirements of General Order 18-19; however, Defendant objects to issuance of most of the proposed subpoenas, raising arguments concerning the relevance, necessity, and prejudicial effect of the anticipated testimony. (*See* Docs. 344, 345, 346, 347, 348, 349, 350, 351.)[2]

### A. Defendant Dusek

Plaintiff anticipates Dusek will testify that Plaintiff complained that prison staff would not mail his outgoing legal mail; that Plaintiff requested to be transferred from Arizona State Prison Complex ("ASPC") Tucson-Catalina Unit to ASPC Tucson-Whetstone Unit; that Dusek transferred Plaintiff to a detention cell and ordered his medical hold removed; and that Dusek failed to follow written prison policies concerning transfer and mitigation requirements. (Doc. 333 at 3.) In response, Dusek states that he plans to appear for trial and that defense counsel is authorized to accept service of a trial subpoena on his behalf. (Doc. 343.) The Court will grant Plaintiff's Motion for Issuance of Trial Subpoena for Defendant Dusek.

### B. Shandan Nettles

Plaintiff states that Nettles, a former Arizona Department of Corrections ("ADOC") Sergeant who oversaw ASPC Tucson-Complex Detention Unit at the time Plaintiff was transferred there, will testify regarding conditions in the detention cell where Plaintiff was housed, including 24-hour lighting and a lack of warm clothing during out-of-cell recreation time; he will also testify that Plaintiff was treated identically to inmates held in detention cells for committing major disciplinary violations, and that the ADOC Director changed prison policy to allow detention cell inmates warm clothing

---

[2] In many of his Motions, Plaintiff indicates the witness at issue will testify to facts supporting the "chilling effect" and "adverse action" elements of his First Amendment retaliation claim. (*See, e.g.*, Doc. 334 at 3; Doc. 336 at 3; Doc. 337 at 3; Doc. 338 at 3; Doc. 339 at 3; Doc. 342 at 3.) Defendant objects to witnesses offering "expert opinions" on whether Dusek chilled Plaintiff's exercise of his First Amendment rights or whether Dusek's conduct reasonably advanced a legitimate correctional goal. (*See, e.g.*, Doc. 346 at 2; Doc. 347 at 2; Doc. 348 at 2; Doc. 351 at 2.) However, it does not appear that Plaintiff intends to elicit opinions from the witnesses on those issues; rather, he seeks to elicit testimony concerning facts that Plaintiff contends proves those elements of his claim.

during out-of-cell recreation time after Plaintiff filed this lawsuit.  (Doc. 334 at 3.)

Defendant objects to issuance of a trial subpoena for Nettles, arguing that Nettles' anticipated testimony is irrelevant, cumulative, and prejudicial.  (Doc. 344.)  Defendant argues that there is no dispute that detention cells are constantly illuminated, and there is no need to have Nettles appear to provide cumulative testimony confirming the testimony of Plaintiff and Dusek on that issue.  (*Id.* at 1-2.)  Defendant further argues that there is no evidence he was aware of the specific clothing items detention cell inmates were not allowed to have, nor any evidence that he was aware Plaintiff asked for those items, and that Nettles's testimony about specific forbidden items of clothing would be prejudicial.  (*Id.* at 2-3.)

The Court previously granted in part and denied in part Defendant's Motion in Limine re: Detention Conditions.  (Doc. 323 at 2-4, 8-9.)  The Court precluded Plaintiff from offering testimony or argument that the conditions of confinement he encountered in the detention unit violated his Eighth Amendment rights or that Dusek was responsible for the existence of those conditions.  (*Id.* at 3.)  However, the Court otherwise denied the Motion in Limine, finding that the conditions of confinement that Plaintiff faced in the detention unit are relevant to the "adverse action" and "chilling effect" elements of Plaintiff's First Amendment retaliation claim, and that Defendant has failed to show that the probative value of evidence of those conditions is substantially outweighed by any concerns under Federal Rule of Evidence 403.  (*Id.* at 3-4.)

Nettles's anticipated testimony concerning detention cell conditions appears to comply with the constraints established by this Court's Order on Defendant's Motion in Limine re: Detention Conditions.  Although Defendant argues that there is no factual dispute that detention cells are constantly illuminated, that fact is not included in the stipulated facts listed in the parties' Joint Proposed Pretrial Order (Doc. 309 at 2), and Plaintiff is entitled to present evidence regarding that issue.  Although Plaintiff presumably will also testify regarding conditions in the detention unit, corroborative testimony on that issue from an ADOC employee would strengthen the credibility of

Plaintiff's own testimony. Accordingly, the Court is inclined to grant Plaintiff's Motion for Issuance of Trial Subpoena for Shandan Nettles. However, Plaintiff has not provided an address at which a subpoena commanding Nettles's trial testimony may be served. Accordingly, the Court will take the Motion for Issuance of Trial Subpoena for Nettles under advisement pending Plaintiff's filing of a Motion addressing whether Defendant should be required to disclose Nettles's last-known address.

### C. Charles Ryan

Plaintiff states that Ryan, the former ADOC Director who wrote, implemented, and oversaw prison policies in the detention facility to which Plaintiff was transferred, will testify that corrections staff such as Dusek are required to be familiar with prison policies, including offering mitigation options as an alternative to housing in a detention cell; that prison policies required 24-hour lighting in detention cells and the withholding of warm clothing to detention cell inmates during out-of-cell recreation time; that Ryan changed prison policy to allow detention cell inmates warm clothing during out-of-cell recreation time after Plaintiff filed this lawsuit; that inmates in Plaintiff's situation were, pursuant to prison policy, treated identically to inmates held in detention cells for major disciplinary violations; and that ADOC's policies regarding detention cell conditions were created to punish or deter inmates from engaging in protected conduct. (Doc. 335 at 3.)

Defendant objects to issuance of a trial subpoena for Ryan, arguing that Ryan cannot offer any relevant testimony that is not available through other witnesses. (Doc. 345.) Defendant avers that there is no dispute that prison staff are required to follow prison policies. (*Id.* at 2.) He further avers that there is no dispute that the ADOC Director is responsible for ADOC's policies, and he argues that it is irrelevant who created ADOC's policies on detention cell conditions. (*Id.*) He argues that evidence of a change in clothing policy for detention cell inmates is inadmissible under Federal Rule of Evidence 407 as a subsequent remedial measure. (*Id.* at 2-3.) He states that there is no need to call Ryan to testify that all detention cell inmates must abide by the same general

policies and rules, and he characterizes as "patently absurd" Plaintiff's proposition that prison policies concerning detention cell conditions were intended to punish or deter inmates from engaging in protected conduct. (*Id.* at 3.) Defendant urges the Court to "substantially limit the evidence of conditions of confinement in detention that it allows Plaintiff to introduce, lest this trial turn into a referendum on Ryan's policies for inmates assigned to detention units." (*Id.* at 3-4.)

Although the Court agrees that evidence of a change in policy regarding warm clothing for detention cell inmates appears to be irrelevant and/or inadmissible as a subsequent remedial measure under Federal Rule of Evidence 407, the Court will grant Plaintiff's Motion for Issuance of Trial Subpoena for Charles Ryan. As discussed above, the Court has already held that evidence of the conditions of confinement that Plaintiff faced in the detention unit is relevant to elements of Plaintiff's First Amendment retaliation claim. (Doc. 323 at 2-4, 8-9.) Whether corrections staff are required to be familiar with prison policies is relevant to Defendant's knowledge of those conditions. Evidence that inmates in Plaintiff's situation are treated identically to inmates placed in detention cells due to major disciplinary violations is also relevant to the "chilling effect" and "adverse action" prongs of Plaintiff's First Amendment retaliation claim. If Plaintiff's interpretation of the intent of ADOC's detention cell policies is incorrect, Ryan can so clarify in his testimony.

**D.   Tara Hoyt, Rose-Maire Cook, Dionne Martinez, and Timothy Cox**

Plaintiff states that Hoyt, Cook, Martinez, and Cox will testify that Dusek requested and received confirmation that Hoyt, Cook, Martinez, and Cox would accept Plaintiff's transfer request to a minimum-security general population yard at ASPC Tucson-Whetstone Unit, but that Dusek instead transferred Plaintiff to a detention unit. (Doc. 336 at 3; Doc. 337 at 3; Doc. 338 at 3; Doc. 339 at 3.)

In response, Defendant argues that there is no need for Hoyt, Cook, Martinez, or Cox to testify, because there is no dispute that Dusek emailed Hoyt, Cook, Martinez, and Cox on November 24, 2015, no dispute that Cook later emailed Martinez, and no dispute

about the information included in Cook's email to Martinez. (Doc. 346 at 1-2, 4; Doc. 347 at 1-2, 4; Doc. 348 at 1-2, 4.)[3] He further argues that there is no evidence in the record suggesting Hoyt or Cox received or reviewed Dusek's email, and that Plaintiff failed to disclose Hoyt, Cook, Martinez, and Cox as witnesses. (Doc. 346 at 1-2; Doc. 347 at 1-2; Doc. 348 at 1-2.)

In its Order on the parties' Motions for Summary Judgment, the Court determined that evidence of the email sent by Dusek to Hoyt, Cook, Martinez, and Cox, and the Whetstone Unit's offer to accept Plaintiff back, is relevant to Plaintiff's First Amendment retaliation claim. (Doc. 255 at 24; *see also id.* at 6 n.5.) Plaintiff listed these individuals in the parties' Joint Proposed Pretrial Statement (Doc. 309 at 2), and the filing of the Joint Proposed Pretrial Statement is deemed to satisfy the disclosure requirements of Federal Rule of Civil Procedure 26(a)(3). (*See* Doc. 84 at 4). Although Defendant argues that there is no factual dispute concerning the anticipated testimony of Hoyt, Cook, Martinez, and Cox, the facts to which Plaintiff anticipates these individuals will testify are not included in the stipulated facts listed in the parties' Joint Proposed Pretrial Order. (*See* Doc. 309 at 2.) The Court will grant Plaintiffs' Motion for Issuance of Trial Subpoenas for Tara Hoyt, Rose-Marie Cook, Dionne Martinez, and Timothy Cox.

### E. Eric Hall

Plaintiff states that Hall, a former Deputy Warden and Dusek's supervisor during the events giving rise to Plaintiff's retaliation claim, will testify that Plaintiff filed administrative grievances relating to legal mail and a transfer from ASPC Tucson-Catalina Unit; that Dusek was required to know and follow prison policies and procedures; that Dusek violated prison policies and procedures by sending plaintiff to a detention cell instead of presenting mitigation options; and that Dusek withheld emails from Hoyt, Cook, Martinez, and Cox that confirmed Plaintiff could be immediately transferred to a minimum-security general population. (Doc. 340 at 3.)

Defendant does not object to Plaintiff's request for issuance of a trial subpoena for

---

[3] Although Defendant disputes the relevance of Cook's testimony, he did not respond to Plaintiff's Motion for Issuance of Trial Subpoena for Rose-Marie Cook.

Hall, but he objects to the scope of the testimony that Plaintiff intends to elicit, arguing that Hall should not be allowed to testify as to his opinions regarding whether Dusek's actions violated ADOC policies, and that Plaintiff should not be allowed to suggest that Dusek or Hall had the authority to transfer Plaintiff to the Whetstone Unit without the involvement of Central Classification staff. (Doc. 349.)

The Court will grant Plaintiff's Motion for Issuance of Trial Subpoena for Eric Hall. Hall's anticipated testimony concerning ADOC policies and whether Dusek's actions complied with those policies appears to fall within the scope of lay opinion testimony under Federal Rule of Evidence 701, although Defendant is granted leave to re-raise any objections under Rule 701 at trial. If Dusek and Hall lacked authority to transfer Plaintiff to the Whetstone Unit without the involvement of Central Classification staff, as Defendant contends, then Hall can so testify at trial.

### F. Kevin Curran

The Court previously denied Plaintiff's request to preclude evidence of Plaintiff's housing at ASPC Phoenix-Alhambra Unit in July and August 2015. (Doc. 323 at 7-8.) The Court found that, if Defendant introduces evidence at trial showing that he was aware Plaintiff had availed himself of the administrative process that led to Plaintiff's transfer from ASPC Phoenix-Alhambra Unit, then evidence of Plaintiff's initiation of that process is relevant to the issue of whether Dusek's conduct while Plaintiff was housed at ASPC Tucson-Catalina Unit reasonably advanced a legitimate correctional goal. (*Id.* at 8.)

Plaintiff disputes the relevance of evidence regarding his use of administrative remedies at ASPC Phoenix-Alhambra Unit in July 2015, but if Defendant presents such evidence, Plaintiff seeks to call Curran, the Warden at ASPC Phoenix-Alhambra Unit at that time, as a rebuttal witness. (Doc. 341 at 3.) Plaintiff anticipates that Curran will testify regarding conditions in the detention cell in which Plaintiff was housed in July and August 2015, and that he will further testify that inmates under any administrative review are treated identically to inmates who have committed major disciplinary violations, with

such treatment intended to punish or dissuade inmates from engaging in constitutionally protected activity. (*Id.* at 3-4.)

Defendant argues that Curran's anticipated testimony is irrelevant and unnecessary because (1) there is no need to call Curran to testify that all inmates assigned to the detention unit must abide by the same rules, as there is no dispute regarding that fact; (2) this case has nothing to do with the conditions of confinement that Plaintiff faced in the Alhambra Unit, and allowing evidence of those conditions would be prejudicial; (3) there is no evidence that Curran was involved in the administrative process that Plaintiff initiated in July 2015; Plaintiff's proposition that ADOC detention cell policies are intended to punish or dissuade inmates from engaging in constitutionally protected activity is "patently absurd"; and allowing Plaintiff to raise that proposition would prejudice Defendant, who did not create the policies or require their enforcement. (Doc. 350 at 2-3.)

The Court agrees that testimony concerning the conditions of confinement that Plaintiff faced in the detention cell in July and August 2015 is irrelevant to his First Amendment retaliation claim in this case. Plaintiff intends to elicit testimony from other witnesses that inmates under administrative review are treated identically to inmates who have committed major disciplinary violations, and thus there is no need to subpoena Curran to provide that testimony. The Court will deny Plaintiff's Motion for Issuance of Trial Subpoena for Kevin Curran.

### G. Courtney Glynn

Plaintiff states that Glynn is General Counsel for ADOC and that she and Ryan wrote, implemented, and oversaw prison policies used at ASPC Tucson-Complex Detention Unit during the time Plaintiff was housed there. (Doc. 342 at 3.) Plaintiff anticipates that Glynn will testify that corrections staff are required to be familiar with prison policies, including policies requiring mitigation options as an alternative to housing in a detention cell; that prison policies required 24-hour lighting in detention cells and the withholding of warm clothing to detention cell inmates during out-of-cell

recreation time; that Glynn changed prison policy to allow detention cell inmates to have warm clothing during out-of-cell recreation time after Plaintiff filed this lawsuit; that inmates in Plaintiff's situation are treated identically to inmates held in detention cells for major disciplinary violations; that ADOC policies regarding inmates in detention cells are meant to punish or deter inmates from engaging in protected conduct; that, in retaliation for Plaintiff filing this lawsuit, Glynn and prison staff have published information that threatens Plaintiff's safety; and that prison staff will not guarantee Plaintiff's safety should he return to prison. (Doc. 342 at 3-4.)

In response, Defendant avers that Glynn previously served as Deputy General Counsel to ADOC but that she is not and has never been General Counsel to ADOC, and that she did not write ADOC's policies concerning detention cell conditions. (Doc. 351 at 1-2, 4.) Defendant argues that none of Glynn's anticipated testimony is relevant or necessary. (*Id.* at 1-4.)

Glynn's anticipated testimony is cumulative to Ryan's anticipated testimony, with the exception of her anticipated testimony concerning the publication of information that Plaintiff feels threatens his safety and her anticipated testimony concerning whether prison staff will guarantee Plaintiff's safety should he return to prison. None of the non-cumulative anticipated testimony is relevant to the First Amendment retaliation claim pending in this case. Accordingly, the Court will deny Plaintiff's Motion for Issuance of Trial Subpoena for Courtney Glynn.

**IT IS ORDERED**:

1. Plaintiff's Motion for Issuance of Trial Subpoena for Defendant Dusek (Doc. 333) is **granted**. The Clerk of Court is directed to issue the subpoena contained in Exhibit A-1 of Doc. 333-1.
2. Plaintiff's Motion for Issuance of Trial Subpoena for Shandan Nettles (Doc. 334) is **taken under advisement**.
3. Plaintiff's Motion for Issuance of Trial Subpoena for Charles Ryan (Doc. 335) is **granted**. The Clerk of Court is directed to issue the subpoena

contained in Exhibit A-1 of Doc. 335-1.

4. Plaintiff's Motion for Issuance of Trial Subpoena for Tara Hoyt (Doc. 336) is **granted**.  The Clerk of Court is directed to issue the subpoena contained in Exhibit A-1 of Doc. 336-1 for service by the United States Marshal.  The Clerk of Court is further directed to complete the subpoena with the address for Tara Hoyt provided under seal at Doc. 303.

5. Plaintiff's Motion for Issuance of Trial Subpoena for Rose-Marie Cook (Doc. 337) is **granted**.  The Clerk of Court is directed to issue the subpoena contained in Exhibit A-1 of Doc. 337-1 for service by the United States Marshal.  The Clerk of Court is further directed to complete the subpoena with the address for Rose-Marie Cook provided under seal at Doc. 303.

6. Plaintiff's Motion for Issuance of Trial Subpoena for Dionne Martinez (Doc. 338) is **granted**.  The Clerk of Court is directed to issue the subpoena contained in Exhibit A-1 of Doc. 338-1 for service by the United States Marshal.  The Clerk of Court is further directed to complete the subpoena with the address for Dionne Martinez provided under seal at Doc. 303.

7. Plaintiff's Motion for Issuance of Trial Subpoena for Timothy Cox (Doc. 339) is **granted**.  The Clerk of Court is directed to issue the subpoena contained in Exhibit A-1 of Doc. 339-1 for service by the United States Marshal.  The Clerk of Court is further directed to complete the subpoena with the address for Timothy Cox provided under seal at Doc. 303.

8. Plaintiff's Motion for Issuance of Trial Subpoena for Eric Hall (Doc. 340) is **granted**.  The Clerk of Court is directed to issue the subpoena contained in Exhibit A-1 of Doc. 340-1.

9. Plaintiff's Motion for Issuance of Trial Subpoena for Kevin Curran (Doc. 341) is **denied**.

10. Plaintiff's Motion for Issuance of Trial Subpoena for Courtney Glynn (Doc. 342) is **denied**.

11. The United States Marshal shall serve the trial subpoenas for Tara Hoyt, Rose-Marie Cook, Dionne Martinez, and Timothy Cox, as the last-known addresses for those witnesses are sealed.

Dated this 6th day of December, 2021.

_____
Honorable Rosemary Márquez
United States District Judge